BELL ATLANTIC MOBILE SYSTEMS, INC., Appellant,

v.

ZONING HEARING BOARD OF THE TOWNSHIP OF O'HARA, and Township of O'Hara, and Fox Chapel Authority.

BELL ATLANTIC MOBILE SYSTEMS, INC., Appellant,

v.

INDIANA TOWNSHIP and Fox Chapel Authority and Gerald Miloser and Laverne Miloser, his wife.

BELL ATLANTIC MOBILE SYSTEMS, INC., Appellant,

v.

FOX CHAPEL AUTHORITY, D.L. Armstrong, individually and as a member of the Fox Chapel Authority, D.B. Bolsar et al.

BELL ATLANTIC MOBILE SYSTEMS, INC., Appellant,

v.

H. Rey WHANGER and Indiana Township.

Gerald MILOSER and Laverne E. Miloser, his wife, Appellants,

v.

FOX CHAPEL AUTHORITY, a municipal authority, and Bell Atlantic Mobile Systems, Inc., a Delaware corporation.

Commonwealth Court of Pennsylvania.

Argued March 12, 1996.

Decided May 21, 1996.

---

**2.** Section 5702 of the Wiretap Act, 18 Pa.C.S. § 5702, defining "wire communication".

William R. Sittig, Jr., John A. Tumolo and Joseph Sabino Mistick, for Appellant, Bell Atlantic Mobile Systems, Inc.

Robert J. Garvin, for Appellants, Gerald and Laverne Miloser.

Robert W. Goehring, for Appellee, Zoning Hearing Board of the Township of O'Hara.

Clifford B. Levine, for Appellees, Fox Chapel Authority, D.L. Armstrong, D.B. Boslar, F.J. Sauereisen, J.L. Podmilsak, R.J. Sclabassi, S.B. Ferguson and H.W. Sphar, Jr.

Before DOYLE and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Bell Atlantic Mobile Systems, Inc. (Bell Mobile) appeals from the orders of the Court of Common Pleas of Allegheny County that concern the proposed construction of communication equipment in O'Hara and Indiana Townships. We affirm in part and reverse and remand in part.

## HISTORY

The Fox Chapel Authority (Authority), a municipal water authority, owns two water towers: 1) the Wise Hill tank in O'Hara Township; and 2) the North tank in Indiana Township. Both towers predate their applicable zoning ordinances and are, thus, considered valid non-conforming uses in their zoning districts.

Bell Mobile, a provider of cellular phone services, entered into negotiations with the Authority to place cellular telephone antennae on the two towers. Leases were drawn up subject to local zoning approvals.[1] The Authority specifically authorized Bell Mobile to obtain all necessary zoning clearances as to both sites.

In May 1994, the Zoning Hearing Board of O'Hara Township denied zoning approval for the Wise Hill tank. Also that month, the Indiana Township Board of Supervisors declined to approve Bell Mobile's application for site plan approval for the North tank on

the basis that it lacked authority to authorize expansion of a non-conforming use.

Bell Mobile filed statutory appeals from both of these determinations (Nos. 2181 C.D. 1995 and 2182 C.D.1995) and also filed an action in mandamus (No. 2184 C.D.1995) against H. Rey Whanger, the Zoning Officer of Indiana Township, seeking to compel the issuance of the building permit for the antennae. Bell Mobile also filed an action against the Indiana Township Board of Supervisors, the Fox Chapel Authority and individual members of both entities alleging constitutional violations (No. 2183 C.D.1995), including a Section 1983 cause of action, 42 U.S.C. § 1983. Finally, Bell Mobile became a defendant in an action for declaratory judgment filed by Gerald and Laverne Miloser (No. 2240 C.D.1995), owners of property abutting the North tank, who sought to have a right-of-way across their property construed in such a manner as to preclude the cellular phone antennae.

The five cases were consolidated for hearing before the trial court.

## I. *BELL ATLANTIC v. O'HARA TOWNSHIP et al.*

After receiving authorization from the Authority to seek any necessary zoning permits for the Wise Hill tank, Bell Mobile applied to the O'Hara Township Zoning Hearing Board for height variances concerning the antennae themselves and for a permit to construct a shelter to house communications equipment and construct an eight-foot vinyl coated fence to enclose the existing tank and equipment shelter. (2a.) The Township Zoning Officer, Cindy L. Davis, denied the variance and building permit because the proposals would violate various Township zoning ordinance sections. Bell Mobile appealed.

At a hearing before the Zoning Hearing Board on April 11, 1994, Bell Mobile's plans met with opposition from neighboring land owners. Bell Mobile presented evidence that it believed qualified Bell Mobile as a "public utility" and that its installations would therefore, be permitted as accessory uses in the

---

**1.** The Authority never signed the lease for the Wise Hill tank in O'Hara Township, but the

Authority's president and manager signed the lease for the North tank in Indiana Township.

R–1 special residential zoning district. The land owners' objections centered largely on a feared diminution in property values and concerns about low level microwave emissions from the proposed antennae. The Zoning Hearing Board denied the variance based on the "overall impact on adjacent property owners ...." (29a.) The Board's only finding as to use was that the antennae, building and use were not permitted in the R–1 district and that there was a thirty-foot height restriction on structures in the Township of O'Hara. (28a.)

On appeal, the trial court did not rely upon the Board's basis for denying the variance but instead analyzed O'Hara Township's zoning ordinance and determined that: 1) Bell Mobile was not a "public utility" which would have allowed Bell Mobile to bypass certain variance requirements; and 2) the ordinance was not *de facto* exclusionary as the ordinance did not fail to provide communications facilities in any district.

■ On appeal to this Court,[2] Bell Mobile argues that the trial court erred because its decision essentially sanctions the wholesale exclusion of communication facilities not only by O'Hara Township but by many other municipalities that have adopted similar zoning regulations. Bell Mobile asserts that the trial court should have found that it was a "public utility" which could provide "essential services" in the R–1 zoning district.

Section 72–11(A) of O'Hara Township's zoning ordinance recognizes "essential services" as permitted accessory uses in the R–1 special residential district. Section 72–66 of the zoning ordinance defines "essential services" as: the erection, construction, alteration or maintenance by *public utilities* ... of *communication,* supply ·or disposal systems. (Emphasis added.) The zoning ordinance does not define the term "public utilities." However, Section 102(2) of the Pennsylvania Utility Code provides that:

The term "public utility" *does not include* ... (iv) any person or corporation, not otherwise a public utility, who or which

furnishes mobile domestic cellular radio telecommunications service.

66 Pa.C.S. § 102(2) (emphasis added). Bell Mobile is a private, non-regulated company, not subject to the rates and tariffs of the Public Utility Commission.

Bell Mobile argues that *Hawk v. Zoning Hearing Board of Butler Township,* 152 Pa. Cmwlth. 48, 618 A.2d 1087 (1992), in which we held that Bell Mobile could be a "public utility" for zoning purposes, supports its position that it is a "public utility" in these circumstances. O'Hara Township, however, claims that *Hawk* does not control because the zoning ordinance in *Hawk* defined "public utility" in such a manner that Butler Township's zoning board held that Bell Mobile was to be considered a "public utility" for zoning purposes. O'Hara Township asserts that O'Hara Township's ordinance does not define "public utility" and thus, by applying Section 102(2) of the Public Utility Code, O'Hara Township did not confer "public utility" status to Bell Mobile. We agree.

In *Hawk,* this Court placed great emphasis on the fact that the Butler Township ordinance specifically defined a "public utility" in the manner that included Bell Mobile. Here, O'Hara Township has not defined "public utility" and thus, we will not create such definition.

Next, Bell Mobile argues that if its installation is not considered an accessory "essential services" use, that O'Hara Township's zoning ordinance is *de facto* exclusionary to all domestic cellular communications facilities because such uses are not otherwise recognized in any other use classification identified in the zoning ordinance.

The testimony before the trial court by the zoning officer stated that she considered Bell Mobile a "retail business" which could locate itself in any area of the O'Hara Township zoned for commercial use so long · as Bell Mobile complied with the remainder of the zoning ordinance. (87a–91a.) Bell Mobile argues that the list of permitted uses under the

---

**2.** Because no additional evidence was received by the trial court, our scope of review of the decision of the Board of Supervisors is limited to determining whether there was a manifest abuse of discretion, an error of law or whether the

findings of fact are supported by substantial evidence. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

"retail business" rubric does not include anything that resembles a communication installation such as the one it proposed. However, the trial court held that the fact that communication towers are not specifically listed was not determinative, as the list merely sets forth examples and does not necessarily exclude other types of retail business.

Bell Mobile further argues that the characterization of it as a commercial venture is irrelevant and that the question truly is whether or not a communication antenna could be located anywhere in O'Hara Township and makes this interesting argument:

> The trial court has no basis for holding that communication facilities "can properly and constitutionally be confined to non-residential districts." This conclusion can be reached only on a case-by-case basis involving a thorough review of the applicable municipal zoning scheme. In fact, zoning ordinances that confine communication facilities to non-residential districts will often be *de facto* exclusionary because it is uncommon for a municipality to zone the highest ground in the community as commercial or industrial.

(Bell Mobile's brief at 19, n. 3.) However, Bell Mobile introduced no evidence as to O'Hara Township's topography in relationship to zoning. While this Court cannot fathom that O'Hara Township would allow a one hundred-foot plus tower in the commercial district which has a height limitation of thirty feet, the facts here could not support such a determination.[3]

However, this Court feels obliged to recognize the historical significance of challenges to zoning ordinances on the basis that they are exclusionary. Since the mid–1950s courts of this Commonwealth have recognized the necessity to focus on the obligation of municipalities to accommodate their share of the developmental needs of an expanding society. *See Medinger Appeal*, 377 Pa. 217, 104 A.2d 118 (1954). In the future, municipalities will be faced with new technologies which they will need to incorporate into their zoning ordinances to share in the developmental needs' of twenty-first century citizens.

Finally, we note that the trial court did not attempt to dissect the health and welfare concerns upon which the O'Hara Township's Zoning Hearing Board relied. While private citizens may not believe that the questions regarding the safety of microwave transmissions have been sufficiently answered by the scientific community, the United States Congress has amended 47 U.S.C. § 332(c), adding *inter alia*, the following new paragraph:

> (iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [Federal Regulatory] Commission's regulations concerning such emissions.

The effect of this new law was not before the O'Hara Township's zoning board but appears to this Court that it will have significant repercussions in the future. However, based upon the facts and law now before us, we affirm the trial court in this case.

## II. Bell Atlantic v. Indiana Township et al.

In 1971, and again in 1985, Bell Atlantic, Bell Mobile's parent company, placed communications equipment on the Authority's North tank in Indiana Township. In early 1994, Bell Mobile entered into negotiations with the Authority to place new antennae on the water tower for mobile phone communications.

On April 18, 1994, Bell Mobile applied for a building permit, requesting permission to *erect* communication antennae on the North tank and to erect an accessory building to house communications equipment. (377a). The application form directed Bell Mobile to complete, *inter alia*, the following information:

> Application is hereby made to the Code Enforcement Officer of the Township of Indiana for a building permit to _____ (insert, as appropriate, erect, remodel, enlarge, reconstruct, move, raze,

---

3. The trial court also found that even if Bell Mobile would be considered a public utility, Section 72–66 of the zoning ordinance's exclusion of maintenance depots would rule out Bell Mobile's proposed equipment shed.

use) the building or buildings described below....

*Id.* In the blank space provided on the application to identify the type of activity for which application was being made, Bell Mobile inserted the word "erect." On the same date the application had been submitted, the Code Enforcement Officer, Mr. Whanger, denied the application "pending BOCA and site plan approval." *Id.* Bell Mobile filed no appeal from Mr. Whanger's denial. Instead, Bell Mobile filed a site plan review application on May 2, 1994. The site plan application indicated that the proposed "use" of the property would be the same principle use, i.e., a water tank, adding accessory communications antennae and equipment building. (360a.) [4]

At Bell Mobile's request, the Indiana Township Board of Supervisors held a public hearing on May 24, 1994, for the purpose of considering Bell Mobile's site plan application. Evidence presented at the public hearing demonstrated that the proposed use of the property by Bell Mobile as a communications facility would appear to involve an extension, expansion or change from the existing non-conforming use.

Section 301.1 of Indiana Township Zoning Ordinance No. 217, as amended, specifically provides, in relevant part, that:

A non-conforming use may be continued but may not be extended, expanded, or changed unless to a conforming use, except as permitted by the Hearing Board in accordance with the following and all other provisions of this Ordinance.

(509a.) Based on this provision, the Board of Supervisors voted to reject the site plan applications due to the possibility that the antennae "extended, expanded or changed" the existing non-conforming use, thus, requiring approval from the Zoning Hearing Board.

Although the decision of the Board of Supervisors reflected that the only reason for denial of the site plan application related to the change of a prior non-conforming use which required Zoning Hearing Board approval, Bell Mobile did not commence pro-

ceedings before the Zoning Hearing Board to obtain such approval but instead filed a statutory appeal to common pleas court.

Before the trial court, Bell Mobile asserted two reasons to support its appeal: 1) that Mr. Whanger, the zoning officer, had actually "approved" the building permit application; and 2) that the Board of Supervisors had "decided" the issue of the use of the property, thereby unlawfully usurping the authority of the Zoning Hearing Board. Bell Mobile also filed a separate action in the nature of mandamus, G.D. 94–2479, against Indiana Township and Mr. Whanger, requesting the court to compel the issuance of a building permit on the theory of deemed approval.

With regard to the statutory appeal, the trial court rejected Bell Mobile's claim that Mr. Whanger had actually approved the building permit application stating that:

On the contrary, the application made by Bell [Mobile] is marked by the zoning officer as having been denied the same day. Thus, if the Supervisors' action is struck down, what is left is a denial of Bell's plans.

(Trial court opinion at 9.)

The trial court next addressed Bell Mobile's contention that the Supervisors had decided the issue of use and thus, usurped the authority of the Zoning Hearing Board. The trial court held that the Supervisors did not render an impermissible decision on the issue of "use," but deferred its decision entirely to the authority of the Zoning Hearing Board on the issue of non-conforming uses. The trial court added that had the Supervisors approved the site plan application then it would have transgressed the jurisdiction of the Zoning Hearing Board under the Pennsylvania Municipalities Planning Code.[5] The trial court noted that the application for the site plan approval was premature at best and that the Supervisors acted properly in refusing Bell Mobile's request.

---

**4.** On May 18, 1994, Bell Atlantic submitted to Indiana Township a correction list addressing issues regarding compliance with the BOCA Code. Compliance with the BOCA Code is not at issue here.

**5.** Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11201.

■ On appeal to this Court, Bell Mobile argues that when their permit application was marked "denied pending 1) BOCA approval; 2) site plan approval," (377a), that in essence the zoning officer conditionally approved their "use" application. Bell Mobile asserts there are three interpretations of the code officer's treatment of their application:

First, since there was no notice of any "use" problem relative to the proposal, it can be assumed that the use was approved by Zoning Officer Whanger.

Second, if the zoning officer's intention was to deny the "use" based on two other regulatory schemes, building code [BOCA] and land development site plan review, the denial of "use" was invalid because of the creation of unauthorized conditions precedent.

Third, if we embraced the Township Solicitor's position that "there is nothing in the record to suggest that the Zoning Officer rendered any rulings with respect to use of the proposed installation by Bell Atlantic for its cellular telephone network," Bell Atlantic's application must be deemed approved....

(Bell Mobile's brief at 12–13.) Indiana Township suggests a fourth interpretation which the trial court found was grounded in law and with which this Court agrees.

First, we note that the building application form directs the applicant to provide information as to the type of activity for which the application is being made. Bell Mobile did not indicate "use" as part of the activity for which the application was being made, but merely applied to "erect" a communications facility. It is uncontested that Mr. Whanger marked the building application "denied" on the date it was received. Not until Bell Mobile filed its site plan application did the issue of the expansion and change of the existing non-conforming use become apparent. Bell Mobile did not originally request a "use" determination and thus, this Court cannot hold that such use determination was made by Mr. Whanger.

■ Next, Bell Mobile argues that the trial court erred in ordering it to seek zoning approval because no law requires zoning to be adjudicated before site plans are approved. Citing Ryan on Pennsylvania Zoning Law and Practice, Bell Mobile argues that "where the central issue is one of zoning, there is no reason to erect a succession of hurdles which the applicant must leap in any specified order." Ryan at Section 9.3.7, p. 67. However, this argument is illogical where a use or zoning issue is readily apparent. There can be no question that a municipality is entitled to require that the issue of zoning be resolved before it places a stamp of approval on the proposed development.[6] This Court stated in *Herr v. Lancaster County*, 155 Pa.Cmwlth. 379, 625 A.2d 164, 172 (1993), *allocatur denied*, 538 Pa. 677, 649 A.2d 677 (1994) that:

[w]hile it is true that a preliminary subdivision application looks toward an approval subject to conditions, there is nothing in the MPC or case law to suggest that conditional approval, rather than outright rejection, *must* be granted where a proposed plan fails to comply with objective, substantive provisions of a subdivision ordinance. And while it has been held that conditional approval should be granted where objections to an application concern compliance with other non-subdivision requirements ... [such as DER or DOT approval] ... or where the problems with the proposed plan are relatively minor, ... where the objections concern fundamental defects in the plan, such as failure to conform to lot size requirements of the zoning ordinance, rejection is appropriate.... (Emphasis in original) (footnotes and citations omitted).

■ Where significant use or zoning issues are apparent on the face of a site plan application, it does not offend policy to deny approval of the plan and require the developer to resolve the use or zoning issue first,

---

6. Bell Mobile's brief contains a quote from a case (not identified or cited by Bell Mobile) that it contends is "directly on point." (Bell Mobile's brief at 14–15.) That case is *National Land and Investment Co. v. Easttown Township Board of Adjustment*, 419 Pa. 504, 215 A.2d 597 (1965).

*National Land*, however, does not address the issue in this case that being whether final approval of a site plan application may be denied because of a fundamental unresolved issue concerning the proposed use of property.

particularly where, as here, it is final approval being sought.

Bell Mobile also argues that the zoning officer actually failed to act on the "use" request and thus, its request should be deemed approved under the MPC.

■ However, all these "interpretations" are a smoke screen to avoid reaching the true issue here, i.e., whether a restriction on the use or zoning of property, which is the subject of a proposed land development, must be considered by the governing body during the fact-finding phase and resolved no later than acceptance of a final development plan by the governing body as set forth in *Graham v. Zoning Hearing Board of Upper Allen Township*, 520 Pa. 526, 555 A.2d 79 (1989).

■ Indiana Township's ordinance specifies the contents of an application for land development plan other than a subdivision application. Section 1263.06 of the Ordinance. (618–619a.) That section specifically provides that included in the information that must be submitted by the developer for consideration (initially by the Planning Commission and ultimately by the Board of Supervisors) is "the Zoning Classification of the Land Development" and "the proposed use of the Land Development." (619a.) Thus, contrary to the assertion made by Bell Mobile that there is no such requirement, Indiana Township's ordinance does provide that the zoning classification and the proposed use of the property are factors that may be considered in determining whether or not to grant site plan approval. While we note that *Graham* concerned a zoning hearing board reviewing a land development plan, "any zoning problems must be considered at the planning stage for the purpose of approving or disapproving the plan. Otherwise, the governing body would not have the required information to make an informed decision. The fact that any changes in zoning laws will not affect a pending action supports the conclu-

sion that zoning plays an important role in determining whether to approve or disapprove a plan." 520 Pa. at 532, 555 A.2d at 81–82.

Bell Mobile's site plan application, which was submitted to the Supervisor for final approval, raised an issue concerning an expansion, extension or change of a non-conforming use. Under Section 301.1 of the Township Ordinance, a provision *never* challenged by Bell Mobile, any proposed, expansion or change in a non-conforming use, except to make it conforming, must receive approval by the Indiana Township Zoning Hearing Board.[7] Thus, faced with an apparent change in non-conforming use, these Supervisors appropriately rejected the request for final site plan approval. The Supervisors recognized the need to address the non-conforming use by the zoning body and the trial court agreed and affirmed the Board of Supervisors' decision. Bell Mobile could have presented the zoning board with its arguments as to zoning but chose instead to appeal to the trial court and now to this Court. Thus, because of the reasons set forth above, we affirm the trial court's determination in this case.

### III. MANDAMUS ACTION

■ The trial court found that there had been no deemed approval of Bell Mobile's building permit application and thus, denied Bell Mobile's request that the permit be granted in its mandamus action.[8]

■ Mandamus "is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty where there is a *clear* legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other adequate, appropriate and specific remedy...." *Aiken v. Radnor Township Board of Supervisors*, 83 Pa. Cmwlth. 190, 476 A.2d 1383, 1388 (1984) (emphasis in original) (citations omitted). Be-

---

7. It is curious that Bell Mobile did not challenge Section 301.1 of the Ordinance as being an infringement upon the right to the natural expansion of a non-conforming use but we recognize that this is an issue that should have been presented to a zoning board and thus, because Bell Mobile never pursued this avenue, we will not address this concern.

8. With regard to the complaint in mandamus, our scope of review is also limited to determining whether the trial court committed an abuse of discretion or an error of law in dismissing the action in light of its findings and rulings on the statutory appeal. *Penllyn Lands v. Board of Supervisors of Lower Gwynedd Township*, 162 Pa. Cmwlth. 14, 638 A.2d 332 (1994).

cause an alleged deemed approval of the permit application was the sole basis for Bell Mobile's mandamus action, the trial court denied relief because it was the same relief requested in Bell Mobile's appeal from the action of the Board of Supervisors. While Pennsylvania law permits an aggrieved party to bring an action in mandamus as a parallel action to a statutory appeal under certain circumstances, the trial court found it inappropriate in this action as the basis in law was the same as in equity. We have carefully reviewed the complaint filed by Bell Mobile and hold that the trial court correctly denied the action in mandamus as there was no clear right to relief to Bell Mobile.

### IV. CIVIL RIGHTS ACTION

In granting the Indiana Township's Supervisors' preliminary objections in the nature of a demurrer, the trial court determined that Bell Mobile's constitutional rights had not been infringed. The trial court held that the Supervisors acted properly in deferring the site plan approval until the matter could be heard by the local zoning board. Thus, there was no infringement of Bell Mobile's constitutional rights, and no claim under 42 U.S.C. § 1983. Moreover, the trial court stated that procedural due process was available to Bell Mobile at the municipal level, in a proceeding before the zoning board.

■ On appeal, Bell Mobile first contends that the Supervisors improperly and illegally rejected its site plan application. Instead, irrational standards motivated by unfounded public sentiment were substituted for adherence to the Township's zoning ordinance, and thus the Supervisors acted irrationally and arbitrarily. Bell Mobile contends that these averrals state a cause of action for denial of substantive due process, and therefore it was error for the trial court to grant Indiana Township's preliminary objections.

■ The touchstone of substantive due process is protection of the individual against the arbitrary exercise of the powers of government. Thus, the deprivation of these rights must contain some element of abuse of government power. *Bello v. Walker*, 840 F.2d 1124 (3d Cir.1988), *cert. denied,*

488 U.S. 851, 868, 109 S.Ct. 134, 176, 102 L.Ed.2d 107, 145 (1988).

Bell Mobile complained that approval of its site plan was mandatory, because it complied with all the requirements of the municipal ordinance, and thus it was deprived of substantive due process in consideration of its application. As such, Bell Mobile avers that the decision of the Supervisors to reject Bell Mobile's site plan, and, in reliance on the dictates of irrational and unfounded public sentiment, to impose criteria on a site plan applicant which are not found in the ordinance, constitutes an arbitrary exercise of power sufficient to state a claim for a substantive due process violation.

■ However, as we have established earlier,[9] the Supervisors acted appropriately in denying site plan approval because significant use or zoning issues were apparent on the face of the site plan application. In *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667 (3d Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992), the Circuit Court held that plaintiff/applicant did not have a valid claim for denial of substantive due process where the City appropriately denied a dance hall license because on the face of the complaint the applicant was out of compliance with the applicable zoning laws and had not applied for a variance. Thus, just as here, when it can be shown from the face of the complaint that the developer was not entitled to governmental approval of its application, the denial of the application cannot be arbitrary and capricious, and therefore cannot constitute a deprivation of constitutional rights. Because we have found the Supervisors appropriately rejected the request for final site plan approval, Bell Mobile cannot have a valid substantive due process claim.

Bell Mobile also argues that it was denied substantive due process because the trial court determined that the Supervisors merely caved in to public pressure, thus showing that the Supervisors' decision to deny site approval was not rationally related to a legitimate government purpose. *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685

9. See discussion *supra,* in Section II of this opinion.

(3d Cir.1993). This argument is based on a fallacious premise. The trial court held that the Supervisors acted properly in deferring the site plan approval, and further stated:

Initially it should be noted that Mobile Bell's grievance against the Authority is at heart a breach of contract action for its failure to ratify the North agreement or sign the Wise Hill contract. Because breach of contract is not a federal constitutional claim, the initial question is whether Bell has alleged facts sufficient to elevate this claim to constitutional stature. Clearly, it has not. *Stated most favorably to Bell* the Complaint establishes that, rather than further alienate an already hostile populace, the Authority has chosen to weasel out of its contractual obligations with Bell.

(Trial court opinion at 12, August 18, 1995) (emphasis added).[10]

Contrary to Bell Mobile's characterization of the trial court's holding, the trial court did not adopt the position that the Supervisors caved in to public pressure. Rather, as is clear from the text of the opinion, the trial court merely stated the facts viewed in the light most favorable to Bell Mobile, as it is obliged to do when reviewing preliminary objections. *Bower v. Bower*, 531 Pa. 54, 611 A.2d 181 (1992).

Nevertheless, citing *Bello v. Walker*, Bell Mobile argues that once it is pleaded that the municipality's action was arbitrary, irrational or tainted by improper motive, other rational reasons for acting are strictly a defense. Consequently, Bell Mobile claims it is a question appropriate for jury resolution, whether the municipality denied the applications due to some improper motive such as political motivation or racial animus, or whether the official action was motivated by reasons rationally related to a legitimate government purpose. *Midnight Sessions.*

■ However, it is well settled that conclusory pleadings do not suffice to state a

claim under 42 U.S.C. § 1983. "The economic drain of civil rights litigation on public resources is simply too great to permit cases to go forward without a substantial indication that a constitutional violation has occurred." *Pace Resources, Inc. v. Shrewsbury Township*, 808 F.2d 1023, 1027 (3d Cir.1987), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987).

Bell Mobile's complaint's only relevant factual assertions are found in paragraphs 37 and 38 in which Bell Mobile asserts that the Supervisors acted outside their jurisdictional authority under the MPC, and denied the site plan based on unfounded public sentiment, which was not cognizable in a site plan proceeding.

First, an allegation that the Supervisor's decision was arbitrary and constituted an error of law is one of the bases for seeking an appeal from a zoning or land use decision. Thus, any zoning appeal would purportedly state a Section 1983 claim under this theory. Moreover, the mere allegation that the decision was based on the fact that a large crowd of people opposed the proposed use is insufficient to state a claim under Section 1983.

In *Midnight Sessions*, the Court held that consideration of public sentiment is not a *per se* substantive due process violation. Indeed, the *Midnight Sessions* Court held that the state may consider community sentiment in evaluating applications for licenses if community objection is based on legitimate state interests. Here, the complaint merely alleged that the denial by the Supervisors was based on *unfounded* public sentiment, a conclusory allegation, insufficient to show whether the public sentiment allegedly considered by the Supervisors was based on legitimate state interests, which was appropriate, or whether it was based on the irrational public sentiment composed of, "mere negative attitudes, or fear, unsubstantiated by factors which are properly cognizable in a

---

**10.** The trial court held, citing *Reich v. Beharry*, 883 F.2d 239 (3d Cir.1989), that this was a simple breach of contract case, and that substantive due process does not afford protection to the contractual interests at stake here. However, the Third Circuit in *Midnight Sessions*, assumed, without deciding, that applicants for a dance hall license were entitled to substantive due process

protection for the consideration of their application. Therefore, given the lack of federal guidance in this area, we do not decide here whether there is a protectable property interest underlying Bell Mobile's claimed entitlement to substantive due process in the consideration of its site application, and instead affirm the grant of preliminary objections on other grounds.

zoning proceeding ...," *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 448, 105 S.Ct. 3249, 3258–59, 87 L.Ed.2d 313 (1985), which constitutes a substantive due process violation. There are simply no facts averred that would allow this Court to conclude that the public sentiment was unfounded, and therefore, these conclusory allegations of irrational and arbitrary decision-making by the Supervisors are insufficient to support a Section 1983 action.

■ Next, Bell Mobile alleged in its complaint that the Supervisor's decision to deny its site plan application violated its right to equal protection under the law. Bell Mobile claims that it was error to grant preliminary objections to its claim of denial of equal protection because this ruling deprived it of an opportunity to develop a record in which it would be shown that Bell Atlantic was treated differently from other developers, and that the motivations were irrational and unrelated to any legitimate government objective.

■ The Equal Protection Clause of the Constitution commands that all persons similarly situated shall be treated alike. The general rule is that legislation or other official action is presumed to be valid and will be sustained if the classification drawn by the state's conduct is rationally related to a legitimate state interest. However, when the classification is by race, alienage or national origin, the law or action establishing such classification is deemed to reflect prejudice and antipathy, and as such is subjected to scrutiny and will be sustained only if it is suitably tailored to serve a compelling state interest. *Cleburne.*

■ When bringing a claim that a violation of the Equal Protection Clause occurred, a plaintiff must establish that it is treated differently because it belongs to a certain classification of people causing those acting under color of state law to treat it differently, and not merely that the plaintiff was treated unfairly as an individual. *Urbanic v. Rosenfeld,* 150 Pa.Cmwlth. 468, 616 A.2d 46 (1992), *appeal aff'd,* without opinion, 534 Pa. 266, 631 A.2d 596 (1993).

Here, Bell Mobile's complaint fails to allege that it was discriminated against and treated differently from other developers because of its membership in a particular class. There is no allegation in the Complaint that Bell Mobile is a member of an identifiable class, and as such it did not allege facts sufficient to establish a claim that it was deprived of the right to equal protection of the law. Although Bell Mobile now mentions in its brief that it is a member of a group of cell site providers, it does not allege that its membership in this class of businesses is the reason that it suffered discrimination or unequal treatment from the Supervisors. In essence, all that Bell Mobile alleges is that it was treated unfairly and irrationally, but under established constitutional jurisprudence, that is not sufficient to raise an equal protection claim. *Urbanic.*

■ Bell Mobile also alleges that it is entitled to punitive damages for the outrageous conduct of the municipalities, authorities and individual defendants in violating its civil rights under Section 1983. Municipalities, authorities and individual defendants sued in their official capacities are absolutely immune from awards of punitive damages under Section 1983. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Bolden v. Southeastern Pennsylvania Transportation Authority,* 953 F.2d 807 (3d Cir.1991), *cert. denied,* 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992). Officials sued in their personal capacities for their allegedly unlawful official actions are protected by qualified immunity. Whether they are immune from suit turns on the objective legal reasonableness of the suit, and the official action must be assessed in light of the legal rules that were clearly established at the time the action was taken. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

We hold that the trial court properly determined that the individual defendants are absolutely immune from Bell Mobile's punitive damage claims brought against them in their official capacities, and are entitled to qualified immunity in their personal capacities. Since we have held above that Bell Mobile has failed to establish that the individual members of the Authority or the Supervisors have by their official action violated any of Bell Mobile's civil rights, it can not be

established that these individuals violated a "clearly established" right, as required to overcome the claim of qualified immunity and grant punitive damages. Thus, Bell Mobile is not entitled to punitive damages.

## V. DECLARATORY JUDGMENT ACTION

Gerald and Laverne E. Miloser (Milosers) filed a declaratory judgment action, seeking the trial court's determination that the easement granted to the Authority can only be utilized by the Authority for the operation of a water system upon the Authority property and for no other purpose or use. The Authority filed an answer and new matter and Bell Mobile filed preliminary objections in the nature of a demurrer. The trial court sustained Bell Mobile's preliminary objections and dismissed the action for declaratory judgment.

The easement in question was created by deed between Robert and Phoebe Braun and the Authority on October 5, 1939. The Milosers are the successors in title to the Brauns. The deed conveyed a tract of land to the Authority upon which a water tower was built, and stated that the "said conveyance shall include a perpetual right of way through other property of the parties of the first part, [the Braun's property]." After describing the metes and bounds of the easement, the conveyance recited the following:

SAID right of way being granted unto the party of the second part for the purpose of providing access to the first tract of land by the party of the second part, for the construction and operation of its water system and said right of way shall include among other things, the right and privilege of the party of the second part at all times to enter upon said right of way and excavate and construct its water system thereon, and at any and all times, by itself or through its contractors, agents or employees, to maintain, inspect, repair, relay, reconstruct and finally remove said system; saving always after such entry to excavate, construct maintain, inspect, repair, relay, reconstruct or remove said system the party of the second part shall replace said right of way in the same condition found upon its entry to do any of the acts hereinbefore mentioned. The party of the sec-

ond part shall also have the right and privilege of using said right of way for roadway purposes.

With the appurtenances:

TO HAVE AND TO HOLD the same unto, and for the use of the Authority is successors heirs and assigns forever.

The Milosers purchased this property subject to this easement or right-of-way providing access to the Authority property which is otherwise landlocked. Since 1971, Bell Telephone Co. has used the right of way to gain access to its telephone antennae.

Bell Mobile argued to the trial court that the language of the covenant expressly permits the use of the right-of-way for roadway purposes providing general access for the Authority and its assigns, while the Milosers argued that the covenant restricts the use to which the easement may be put to the operation of the water system. The trial court agreed with Bell Mobile's interpretation, and held that the sentence, "[t]he Authority shall also have the right and privilege of using the right of way for roadway purposes" conveyed a right to use the easement for accessing the Authority's property, and was not confined to accessing the water system itself. Thus, Bell Mobile's proposed use of the right of way to access and periodically service cellular phone equipment was completely consistent with the use contemplated by the covenant, and thus it was a permitted use of the right-of-way.

■ In reviewing the grant of preliminary objections in the nature of a demurrer, this Court must accept as true every well pleaded fact in the non-moving party's complaint and all inferences reasonably deducible from those facts to decide whether the trial court abused its discretion or committed an error of law in granting these objections. *Faust v. Commonwealth Department of Revenue*, 140 Pa.Cmwlth. 389, 592 A.2d 835 (1991), *appeal denied*, 530 Pa. 647, 607 A.2d 257 (1992). Because we believe that the trial court erred as a matter of law, we reverse the grant of preliminary objections on this matter.

■ It is well established that the same rules of construction that apply to con-

tracts are applicable in the construction of easement grants. *Zettlemoyer v. Transcontinental Gas Pipeline Corp.*, 540 Pa. 337, 657 A.2d 920 (1995). In construing the scope of an easement, the intention of the parties must be ascertained. *Lease v. Doll*, 485 Pa. 615, 403 A.2d 558 (1979). The parties' intention is determined by a fair interpretation and construction of the grant, and may be shown from the language of the grant *construed with reference to the circumstances known to parties at the time the grant was made. Zettlemoyer.*

It is significant that the grant of the easement was made at the same time and by the same instrument as was the conveyance of the tract of land to the Authority for the construction of a water tower/system. Because the tract was landlocked, it was necessary to purchase a right-of-way over which a road could be built and under which the pipes carrying the water could be laid. The language of the covenant granting the easement reflects these circumstances. The first sentence states that the easement was granted, "for the purpose of providing access to the first tract of land by the party of the second part, for the *construction and operation of its water system*, and said right of way shall include, *among other things*, the right and privilege of the Authority at all times to enter on said right of way and excavate and construct its water system thereon . . .," and then it goes on to list the things the Authority may do once the water system is built, i.e., maintain, reconstruct, reinspect or remove the water system, etc., subject to the Authority's duty to restore the land to the condition found upon its entry.

Bell Mobile argues that the language "among other things" indicates that other uses of the easement were contemplated. However, from the position of, "among other things" in the sentence, it is clear that this phrase does not expand or modify the words "for the construction and operation of its water system," thereby allowing for other uses of the easement, but instead places no limitations on the rights of the Authority to do those things necessary, "for the construction and operation of its water system." Thus, this language allows the Authority to enter on the easement to do all such things, not limited to those activities listed in the grant of easement, which are necessary for laying down the system of pipes and valves, etc., in the water system.

Similarly, in order to maintain, reconstruct, inspect and repair the water system, the drafter of the grant of easement must have realized a roadway was needed so that vehicles might have access to the system. Therefore, in keeping with attending circumstance at the time of the conveyance, the language in the grant stating, "[t]he party of the second part shall also have the right and privilege of using said right of way for roadway purposes," must be interpreted as providing for such roadway access for the purpose of maintenance, repair, etc., of the water storage tank/tower and the lines connected to it.

The Milosers contend, and we agree, that the interpretation which is urged by the trial court and which would allow for general access to the property for all purposes, would also allow a subsequent owner of the Authority's property to erect an apartment building on the land and burden the easement with providing roadway access to a multi-family apartment structure. Bell Mobile argues that because the Milosers can and have not argued that the right of way will be additionally burdened as a result of the proposed use, the right of way can be utilized as proposed by Bell Mobile.

We find no merit to Bell Mobile's argument. Our Supreme Court has held that there is an increased burden on the servient estate, i.e. the Milosers' property, when there is a change in the width or location of the easement, or in the frequency in which it is used. *Garan v. Bender*, 357 Pa. 487, 55 A.2d 353 (1947). While the proposed use of the easement, to construct and maintain cellular phone communication equipment, does not involve widening the road or relocating the easement, by necessity, it will increase the frequency in which the right of way is used. Bell Mobile cites no case law which holds that the grantors must explicitly allege that such additional burden on the easement will occur, and such is not necessary when it is obvious that the proposed additional use will increase the frequency of use and impact the Milosers' property.

The Authority also argues that our courts have consistently permitted express easements to accommodate modern developments, *so long as the use remains consistent with the purpose for which the right was originally granted. Hash v. Sofinowski,* 337 Pa. Superior Ct. 451, 487 A.2d 32 (1985). The Authority claims that because the use of the land for cellular communications technology is one of these modern developments which our courts presume to have been contemplated by the parties, such use is permitted. The Authority cites such cases as *Lease* and *Piper v. Mowris,* 466 Pa. 89, 351 A.2d 635 (1976), in which it was established that the language of the grant of the easement was for the purpose of providing an outlet to the main road, and access to the landlocked property. The Pennsylvania Supreme Court held that, although the easement was rarely, if ever, used by automobiles or other vehicles in the past, the successor grantee's contemplated use of the easement for vehicular travel reasonably fulfilled the easement's specific purpose, namely that the easement was to serve as an outlet from the grantee's land to the public road. Thus, when the use, or more appropriately, purpose of the easement remains the same, the Supreme Court will interpret the grant of easement to accommodate advances in technology.

Similarly, in *Bowers v. Texas Eastern Transmission Corp.,* 148 Pa.Cmwlth. 500, 611 A.2d 1350 (Pa.Cmwlth.1992), we held that when the express easement gave the right to the corporation to renew and alter the two pipelines which ran across the servient estate, the clearing of additional land in order to lay a larger pipeline was necessary and reasonable for the fulfillment of the easement's purpose.

◼ Thus, our cases tell us that we must determine if the grantee's asserted use is a reasonable and necessary use in relation to the original purpose of the grant and within the intention of the original parties to the grant. *Zettlemoyer.* As we have stated, the original purpose of the grant of the right-of-way over the Milosers' property was for the purposes of constructing and operating a wa-

ter system, and therefore, unlike the above cited cases, Bell Mobile's proposed use of the right of way, to construct and periodically service cellular phone communication equipment is not permitted. It is not merely an advance in the technology used to conduct or operate a water system, which is within the original purpose of the grant, and which fulfills the easement's purpose, but it is a different use, not related to the original purpose, and therefore outside the scope of the easement.

Therefore, we reverse the trial court's grant of preliminary objections dismissing the Milosers' declaratory judgment action, and remand to the trial court to allow Bell Mobile to file an answer to the Milosers' complaint to determine if there is a remaining *factual* dispute among the parties.[11]

Accordingly, we affirm the orders of the trial court as to the cases found at Nos. 2181 C.D.1995, 2182 C.D.1995, 2183 C.D.1995, and 2184 C.D.1995. We reverse and remand the trial court's order granting preliminary objections and dismissing the complaint at No. 2240 C.D.1995, to give Bell Mobile the opportunity to file an answer, in accordance with the foregoing opinion.

### ORDER

AND NOW, this 21st day of May, 1996, the orders of the Court of Common Pleas of Allegheny County are affirmed as to the cases found at Nos. 2181 C.D.1995, 2182 C.D. 1995, 2183 C.D.1995 and 2184 C.D.1995. We reverse the order of the Court of Common Pleas of Allegheny County granting preliminary objections as to No. 2240 C.D.1995, and remand the case to allow Bell Mobile to file an answer within thirty (30) days of the entry of this order.

Jurisdiction relinquished.

---

11. Because we reverse the trial court's order dismissing the Milosers' complaint, we need not address the Milosers' contention that the trial court erred in dismissing their complaint as to the Authority. If factual issues remain in dispute as between the Milosers and the Authority, on remand, the trial court will also rule on this dispute.