David SIMONITIS, Appellant,

v.

ZONING HEARING BOARD
OF SWOYERSVILLE
BOROUGH.

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 2004.
Decided Jan. 3, 2005.

William L. Higgs, Mountain Top, for appellant.

Frank J. Aritz, Kingston, for appellee.

BEFORE: LEADBETTER, J., and LEAVITT, J., and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

David Simonitis (Appellant) appeals from an order of the Court of Common Pleas of Luzerne County (trial court) denying his request to expand his auto repair business (Application), a non-conforming use of his property.[1] On remand from the trial court, the Swoyersville Zoning Hearing Board (Board) found that the use of the property as a garage had been abandoned, and the trial court upheld this finding. Appellant also appeals the trial court's earlier remand order; he contends that the trial court erred in remanding because the Board failed to issue a written decision of the Application in a timely fashion, which, as a matter of law, resulted in a deemed approval of the Application.

The property at issue in this appeal (Property) is located in a Residential Zoning District (R–1) in the Borough of Swoyersville (Borough). The R–I district was established in 1976 pursuant to the Borough's enactment of the Official Zoning Map and Zoning Ordinance (Ordinance). Prior to this enactment, the Property had been used for over fifty years as a commercial auto body and repair garage, as well as a gas station at one point.

In 1986, Jean and Frank Brennan purchased the Property, which they used to operate an auto body repair shop known as B & B Auto Body. In 1988, Frank Brennan died, after which his son, Mark Brennan, continued to operate the business full-time. Because B & B Auto Body did not thrive, in July of 2000, Mark began working full-time at the Tobyhanna Army Depot (Tobyhanna) as a painter. For approximately six months after Mark Brennan began working at Tobyhanna, B & B Auto Body continued to have one employee working fulltime at the garage. In addition, Mark continued to restore his own car on the Property and occasionally did automobile work for special customers.[2] He also maintained a number of vehicles on the property and in the building, along with his tools, a compressor, and a paint mixing system.

In early 2001, Mark Brennan and his brother, Frank Brennan, an attorney, discussed listing the Property for sale with their mother Jean, the record owner of the property at the time. Although the Property was not listed, an agreement of sale was negotiated with Appellant. In connection therewith, in June 2002, Appellant paid for the removal of gasoline storage tanks located on the property and performed general maintenance around the garage. In July 2002, in anticipation of his purchase of the Property, Appellant filed the Application to expand the auto body garage use by enlarging the building. On September 30, 2002, Appellant and Jean Brennan executed an Agreement of Sale contingent upon Appellant's obtaining approval to enlarge the building on the Property for continuing the Property's nonconforming use as a garage.[3]

---

1. This was Appellant's second application to expand an existing nonconforming use auto repair garage building.

2. When asked if he continued to work at the garage or if the garage business had ceased, Mr. Brennan replied, "No, I did some work. I have a 1967 Thunder Bird that I'm restoring. Unfortunately with my job and with my kids, I don't have a lot of time, but I do get up there and I work for people I know if somebody needs something done." Reproduced Record at 56 (R.R. ——).

3. A deed for the Property in the name of Appellant was recorded in Luzerne County on December 16, 2003.

During this time, the Board conducted two hearings on the Application. During its regular monthly meeting on October 19, 2002, the Board voted to deny the Application. No written decision was issued by the Board with respect to the Application.

Appellant appealed the Board's decision to the trial court on November 22, 2002, claiming that his Application had been deemed approved because the Board failed to issue a written decision within 45 days of its last hearing,[4] i.e., September 19, 2002. In addition, on April 11, 2003, Appellant filed a Petition for Rule to Show Cause Why Judgment Should Not Be Entered In Favor of Appellant For Failure of [Board] to Issue Written Decision as Required by 53 P.S. § 10908(9) of the Pennsylvania Municipalities Planning Code.[5] The trial court heard oral argument, but it did not receive additional evidence. On July 22, 2003, the trial court vacated the Board's decision and remanded the case to the Board for "re-hearing so that proper record may be developed." R.R. 171.

Pursuant to this remand order, the Board conducted another hearing on October 23, 2003. In a decision rendered on December 2, 2003, the Board again denied Appellant's Application, this time in writ-

ing. Appellant again appealed the Board's decision to the trial court. A hearing was held on March 17, 2004, at which the trial court received no further evidence. On April 29, 2004, the trial court denied Appellant's appeal. The trial court held that substantial evidence, which was presented at the October 23, 2003, hearing, supported the Board's conclusion that the nonconforming use of the Property as an auto body repair garage had been abandoned by Jean Brennan. Appellant then appealed to this Court.

On appeal,[6] Appellant contends that Jean and Mark Brennan never intended to abandon nor did they actually abandon the use of the Property as an auto repair garage. He contends that the factual findings of the Board do not support the conclusion that the Brennans abandoned the nonconforming use and, therefore, the trial court erred in affirming the Board. Next, Appellant argues that the trial court erred in not finding that his Application was deemed approved because the Board failed to render a written decision on the matter within 45 days of the last day of the Board's hearing.

We consider first the question of whether the Property's use as an auto

---

4. On that same date, November 22, 2002, the Board issued a written decision denying the Application, 64 days after the last hearing on the Application.

5. On April 11, 2003, the trial court issued a Rule to Show Cause to the Board, to show cause why an order should not be entered finding a deemed decision approving Appellant's Application and nullifying the Board's oral decision and the Zoning Officer's written notice of the Board's decision dated November 22, 2002. In addition, the trial court scheduled a hearing on the matter for May 7, 2003. A Motion for Continuance by the Board was granted by the trial court, rescheduling the hearing for May 14, 2003. The record does not indicate that that hearing took place, but simply references the oral

argument before the trial court prior to its issuance of remand order of July 22, 2003.

6. In zoning appeals, as here, where the trial court takes no additional evidence, this Court's scope of review is limited to determining whether the zoning hearing board committed an abuse of discretion or an error of law. *Baker v. Chartiers Township Zoning Hearing Board*, 677 A.2d 1274, 1276 (Pa. Cmwlth.1996). A conclusion that the zoning hearing board abused its discretion may be reached only if the zoning hearing board's findings are not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bailey v. Upper Southampton Township*, 690 A.2d 1324 (Pa.Cmwlth.1997).

repair garage had been abandoned. Section 2.063 of the Ordinance provides that "[a] non-conforming use of a building or portion thereof which is hereafter discontinued for a continuous period of one (1) year, shall not again be used except in conformity with the regulations of the district in which such building is located." [7] As the party claiming abandonment, the Borough had the burden of proving abandonment. To that end, the Borough was required to show that (1) the landowner intended to abandon the nonconforming use, and (2) the landowner actually abandoned the use. *Heichel v. Springfield Township Zoning Hearing Board*, 830 A.2d 1081, 1086 (citing *Latrobe Speedway*, 553 Pa. 583, 720 A.2d 127 (1998)). However, as stated in *Heichel*, "[a]bandonment, however, cannot be shown by mere proof of failure to use the property for a certain period of time." *Heichel*, 830 A.2d at 1087 (Pa.Cmwlth.2003) (citations omitted).

In *Latrobe Speedway*, a lessee sought to use the property he had leased for auto racing, a non-conforming use that had not been conducted on the property for nearly fourteen years. However, the landowner testified that he never intended to abandon the racetrack use of the property. Further, although the structures on the property were in disrepair, the landowner had made no attempt had been made to dismantle them or otherwise convert the use of the thirty-five acre tract for something other than racing. Finally, the owner paid real property taxes based on the property's assessment as a racetrack, and he was attempting to sell or lease the premises as a racetrack. The Pennsylvania Supreme Court concluded that these facts supported neither an intention to abandon nor actual abandonment.

In *Heichel*, this Court considered whether a landowner had abandoned the use of

her property as a salvage yard. As here, the owner of the family business had died; nevertheless,

> [n]o attempt was made by the Landowner to convert the property to some other use; no structures were demolished; no roads were removed; and no equipment was sold. The only change was in the volume of the inventory of abandoned cars, which is to be expected in a business of this type.

*Heichel*, 830 A.2d at 1087. In addition, the landowner had been actively marketing the property as a salvage yard and had negotiated its sale at a price that contemplated that use. Based on these facts, we found that the non-conforming use of the property had not been abandoned.

■ In the present case, in the Board made the following findings of fact in respect to the purported abandoned use of the auto body repair garage:

6. The son of the current owner, Mark Brennan, testified that he had closed his auto repair business at the site of the premise when he took a full-time job at Tobyhanna Army Depot in July of 2000.

7. Mark Brennan also indicated that he had boarded up the front doors on the premises with the expectation of installing a new front door.

. . .

11. Current owner extended the Agreement of Sale for Appellant through October 24, 2003 with the intent to have the building leveled by November 14, 2003 siting [sic] that they were no longer willing to pay the cost of maintaining the building and experiencing a prob-

---

7. Borough of Swoyersville, PA, Ordinances— art. 2, § 2.063 (1976).

lem with properly insuring the building given its condition.

R.R. 37–38. The Board found that these facts supported an intention to abandon and issued the following conclusions of law:

4. The relevant evidence presented to the Board indicates that Mark Brennan ceased operation in July of 2000.

. . .

6. The relevant testimony indicated that the subject building has been damaged by erosion to the point where the roof is leaking, the structural side-walls have cracked and the footer has fallen causing structural damage to the building.

. . .

11. The Appellant failed to apply for a variance and his proposed expansion of the subject building will encroach upon neighboring property owners and will violate set-back requirements.

R.R. 39–40.[8]

■ However, legal abandonment requires more than intent. In *Latrobe Speedway*, the Pennsylvania Supreme Court announced the adoption of an analysis of abandonment:

Failure to use the property for a designated time provided under a discontinuance provision is evidence of the intention to abandon. The burden of persuasion then rests with the party challenging the claim of abandonment. If evidence of a contrary intent is introduced, the presumption is rebutted and the burden of persuasion shifts back to the party claiming abandonment.

What is critical is that the intention to abandon is only one element of the burden of proof on the party asserting abandonment. The second element of the burden of proof is actual abandonment of the use for the prescribed period. This is separate from the element of intent.

*Latrobe Speedway,* 553 Pa. at 592, 720 A.2d at 132.

In the present case, Mark Brennan testified that he intended to keep the garage functioning as a business, at least part-time. In addition, all of Mark Brennan's tools, his painting system, and "office stuff" (desks, chairs) remain in the building. R.R. 56. He testified that he continued to work on his own car as well as on other people's cars on a case-by-case basis at the Property. B & B Auto Body continued to advertise in the telephone directory well into 2001. Finally, Jean Brennan, through the efforts of her sons, intended to sell the Property as an auto body garage. Indeed, the Agreement of Sale between Jean Brennan and Appellant contemplated the buyer being able to continue the nonconforming use. In short, this evidence rebutted the presumption that it was the intention of the Brennans to abandon the Property's use as an auto garage. Under *Latrobe Speedway,* it then became the burden of the Borough to show actual abandonment.

The trial court found that as of January 2002, the nonconforming use had technically been discontinued for one year after B & B Auto Body's one employee was discharged in January 2001. The trial court also found it significant that Mark Brennan could not recall when he last filed payroll taxes and that he had continued only electric service at the garage. The trial court relied on this Court's decision in

---

8. These "conclusions of law" are, in actuality, findings of fact.

*Doak v. Zoning Hearing Board, South Strabane Township,* 78 Pa.Cmwlth. 391, 467 A.2d 655 (1983), wherein we found that an auto body repair shop had been abandoned. We reasoned as follows:

Among the trial court's findings was determination that, after the death of [Mr.] Hudak, the first floor garage was never again used as an automobile repair shop on a *commercial basis,* but was used only by family members and friends who occasionally availed themselves of the tools and equipment to work on their vehicles.

*Doak,* 467 A.2d at 657 (italics in original).

There are several problems with the trial court's analysis. First, it was the Borough's burden to prove abandonment. The trial court, however, seemed to place the burden on the Brennans to show they had not abandoned the auto garage use of the Property, and this was error. Second, this case is distinguishable from *Doak.* The Brennans continued to work on the autos of persons other than family members, and this evidence was not rebutted. Accordingly, a commercial use, albeit not a thriving one, continued on the Property even though the last employee had been discharged. The business simply continued in the form of a sole proprietorship with Mark Brennan as the sole individual operating the business. The evidence relied upon by the trial court showed only a reduced use of the Property as a garage, but not an abandonment. Finally, as in *Latrobe Speedway* and *Heichel,* the owners were trying to sell the Property as a non-conforming auto repair garage.

The *Latrobe Speedway* test is a difficult one to satisfy for those seeking to show abandonment of a non-conforming use. In this case, the trial court erred in concluding that the record supported a finding of

intent to abandon or of actual abandonment of the Property as an auto repair garage.

■ In his second issue on appeal, Appellant contends that the trial court erred as a matter of law in not finding a deemed approval of Appellant's Application. Section 908(9) of the Municipalities Planning Code (MPC) [9] provides:

The board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board or hearing officer. ...[W]here the board fails to render the decision within the period required by this subsection or fails to commence, conduct or complete the required hearing as provided in subsection (1.2), the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time. When a decision has been rendered in favor of the applicant because of the failure of the board to meet or render a decision as hereinabove provided, the board shall give public notice of said decision within ten days from the last day it could have met to render a decision in the same manner as provided in subsection (1) of this section. If the board shall fail to provide such notice, the applicant may do so. Nothing in this subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent jurisdiction

This Court has held that an oral decision announced at a meeting is not the equivalent of a "written decision" required by Section 908(9). Further, even if the applicants were present at the meeting and

---

9. Section 908 of the Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10908(9).

knew that their application was rejected, the written decision requirement cannot be avoided. *Borough of Prospect Park v. Molnar,* 57 Pa.Cmwlth. 99, 426 A.2d 1193 (1981).

The Board contends that this issue has been waived because Appellant did not timely appeal the trial court's remand order denying his claim that the Application had been deemed approved. The remand order was issued on July 22, 2003, but Appellant did not appeal it until after the remand when the trial court issued its April 29, 2004, order. In response, Appellant contends that remand orders are not appealable. The MPC sets forth the procedures to be followed where a landowner asserts a deemed approval; however, we need not reach this issue in light of our holding that the Property's non-conforming use as an auto repair garage had not been abandoned.

Accordingly, we reverse the order of the trial court.

### ORDER

AND NOW, this 3rd day of January, 2005, the order of the Court of Common Pleas of Luzerne County of April 29, 2004, in the above-referenced matter is hereby reversed.

