LHT ASSOCIATES, LLC, Appellant

v.

TOWNSHIP OF HAMPTON and the Hampton Township Zoning Hearing Board, and Paul Loftus and Bridget Loftus, Husband and Wife.

Commonwealth Court of Pennsylvania.

Argued May 8, 2002.
Decided Oct. 31, 2002.

David F. Toal, Pittsburgh, for appellant.

Thomas T. Frampton and Christina E. McKaveney, Pittsburgh, for appellee, Twp. of Hampton.

Dwight D. Ferguson, Pittsburgh, for appellees, P. Loftus and B. Loftus.

BEFORE: FRIEDMAN, Judge, COHN, Judge, and FLAHERTY, Senior Judge.

Opinion by Judge COHN.

This is an appeal by LHT Associates, LLC (LHT) from an order of the Court of Common Pleas of Allegheny County, that affirmed a decision of the Hampton Council (Council), denying applications for site plan approval and for preliminary and final subdivision plan approval, as well as an order from the Zoning Hearing Board of Hampton Township (Board) denying nine occupancy permits.

LHT seeks to build a Lowe's and adjacent parking lot on property consisting of nine lots. It proposed a plan that would consolidate the nine lots and then re-divide them into two parcels. A small peninsular shaped lot (Lot 2) would consist of 1.288 acres and LHT planned to use that lot, which is zoned entirely commercial, for a restaurant. The proposed Lot 1, consisting of nearly 22 acres, is presently split zoned approximately half residential (RA) and half commercial. The plan calls for this area to be utilized for a single commercial project with the Lowe's store to be built in the area zoned commercial and the parking lot in the area zoned residential. In its site plan, LHT requested that the entire split-zoned tract be employed for a single use, with commercial parking located on the portion zoned residential. Initially, LHT had filed an application to re-zone Lot 1, which it later withdrew. It then sought, in essence, to accomplish a zoning change via its applications filed with Council for preliminary and final subdivision approval and site approval. Council denied both of LHT's applications.

Among the reasons cited for Council's denial of the subdivision plan were that the plan was not consistent with the objectives of the subdivision ordinance and its definition of "lot," that the plan was not consistent with the purpose and objectives of the zoning ordinance, including the requirements for lot consolidations, and that the zoning ordinance requirement of buffer yards prohibits consolidating a split-zoned property. Council also denied LHT's site plan application, primarily for its noncompliance with the zoning ordinances of the Township. Among the factors cited were that the parking spaces required for the commercial retail store were not a permitted accessory use in the residential zone.

In addition, LHT filed nine requests for occupancy permits with the zoning officer, which he denied on the basis that each separate lot would not allow the proposed use and that the requests were premature since no consolidation had been granted. The zoning officer also indicated that, on the merits, the permits could not be granted because the use proposed was inconsistent with the split zoning designation, was at odds with the definition of "lot" in the zoning ordinance, did not meet the requirements for a buffer yard, and the proposed parking lot did not qualify as a permitted accessory use if placed in the area zoned residential.

■ The Board upheld the zoning officer's permit denial, and opined that the property was not valueless as zoned. The Board also rejected a validity challenge to the zoning ordinance in which LHT asserted that reverse spot zoning was occurring. The Board found the challenge lacking in specificity and, alternatively, found that, as to the merits, LHT failed to meet its burden of proof on this issue. Additionally, it rejected a challenge to the zoning map and also held that no reverse spot zoning had occurred. Both the Council and Board decisions were appealed; the common pleas court consolidated them and af-

firmed. This appeal ensued.[1]

On appeal, LHT asserts numerous issues which we shall deal with seriately. However, we note, initially, that many of the issues raised by LHT result from its creative attempts to re-zone. Such issues properly belonged before either a zoning board via a request for variance or before a township council via a request for re-zoning or a curative amendment. As we have stated, "[W]e cannot uphold subdivision rulings which would effectively amend that zoning; that would be equivalent to letting the township 'hold in reserve unpublished requirements capable of general application for occasional use.'" *Goodman v. Board of Commissioners of the Township of South Whitehall,* 49 Pa. Cmwlth. 35, 411 A.2d 838, 842 (1980) (citation omitted) (finding, *inter alia,* that a developer, seeking to build several commercial structures on a 16.6 acre tract of land zoned general commercial, could not be prevented from building structures because they were near, but not in, a residential district).

We also note, preliminarily, that the zoning of property, a legislative act, is usually not subject to successful challenge unless disparate treatment is shown. *See generally* Ryan, *Pennsylvania Zoning Law and Practice,* § 3.4.7 (1999). Appellants have not proven that the zoning boundary at issue here is not rational, since the line is drawn to divide steep sloping topography, which is zoned residential, from a more level area, zoned commercial.

## VALIDITY OF ZONING MAP/SPOT ZONING

LHT first maintains that it met its burden to demonstrate spot zoning. It asserts that the zoning map is outdated due to the passage of time and intervening events, arguing that the portion of the property zoned residential has effectively been reverse spot zoned because of the surrounding development. Reverse spot zoning occurs where an "island" develops as a result of a municipality's failure to rezone a portion of land to bring it into conformance with similar surrounding parcels that are indistinguishable. *Guentter v. Borough of Lansdale,* 21 Pa.Cmwlth. 287, 345 A.2d 306 (1975). The trial court wrote:

[LHT's] property has not been singled out for differential treatment. The existing zoning of the adjacent land bordering [LHT's] property is predominantly residential. The southern portion of [LHT's] property, the parcel at issue, is zoned residential. The northern portion of the ... property, comprising the land where Wildwood Road and Route 8 intersect, is zoned Highway Commercial. A portion of the neighboring property, across Route 8, is zoned for conservation. [LHT's] parcels are clearly not an "island" singled out for treatment un-

---

1. The trial court permitted the record to be augmented by allowing the inclusion of the record documents for approval of the Shoppers' Plaza Highway Site Plan, which concerned the property where a Home Depot was built. We hold that this constituted the taking of additional evidence and that the trial court was, thus, acting *de novo.* Therefore, our scope of review is to determine whether the trial court committed legal error or abused its discretion. *David Aaron Ltd. v. Borough of Jenkintown,* 63 Pa.Cmwlth. 577, 439 A.2d 1322 (1982). We distinguish *Amerikohl Mining, Inc. v. Zoning Hearing Board of Wharton Township,* 142 Pa.Cmwlth. 249, 597 A.2d 219 (1991), *petition for allowance of appeal denied,* 529 Pa. 652, 602 A.2d 861 (1992), cited by the Township of Hampton for the proposition that the trial court was not acting *de novo,* on the basis that the evidence received here related to the merits of the case, not to a collateral issue, such as the alleged bias of the tribunal, that was the subject of the additional evidence in *Amerikohl.*

justifiably different from that of surrounding land.

(Trial court opinion, pp. 3–4.) We agree.[2] This determination is supported by the record. The topographical map submitted clearly demonstrates that there is only one commercial tract next to the property and the rest of the surrounding area is zoned either residential or conservation. Therefore, LHT's assertions of reverse spot zoning cannot prevail.

■ LHT also asserts that Route 8 traffic precludes safe use as a residential development. It maintains that its expert, who testified that the failure to rezone the residential area as commercial resulted in a small area that was actually unsafe for residential development because it would not qualify for a traffic signal and because of a potential need for turning left onto Route 8 from a driveway, was not refuted. The Board found that LHT's traffic proposals were speculative, relying, *inter alia*, on needed actions by the Pennsylvania Department of Transportation, that were not even certain to occur. Further, the Board as fact finder was not obligated to credit the testimony of this witness, even if it was unrebutted. *McDonald v. Zoning Board of Adjustment*, 133 Pa.Cmwlth. 664, 577 A.2d 240 (1990).

Thus, LHT did not meet its burden to show that changes in traffic flow rendered the zoning map invalid.

2. LHT's basic argument has been rebuffed before:

"The line of demarcation must be fixed somewhere ... To carry appellant's contention to its logical conclusion would lead to the encroachment upon and the complete destruction of the residential character of the other properties in the immediate area." If we were to hold that the zoning of appellants' strip as residential is arbitrary and unconstitutional merely because

## ACCESSORY PARKING AND ATTENDANT CLAIMS

LHT argues that it had sought occupancy permits for its nine separate parcels in order to obtain an interpretation of the Ordinance regarding accessory parking in RA areas, buffer yards in its proposed single development, height of retaining walls and the need for a variance for slope averaging. LHT asserts that the trial court erred in refusing to address its claims that Council's interpretations of the Zoning Ordinance were arbitrary, capricious, an abuse of discretion and an error of law as applied to LHT. We consider the parking issue first.

■ Section 13.160 of the zoning ordinance states:

A commercial vehicle of not more than one (1) ton capacity, used by the occupant of a residential property for transportation to and from work, may be parked on a residentially zoned property. A commercial vehicle may be parked on a property containing a nonconforming use served by such commercial vehicle but no parking lot or area to serve a use not permitted in a residential zone may be placed in that residential zone.

LHT asserts that this provision is only intended to prevent independent truckers from parking their rigs in the driveways of their homes in residential developments. Relying on the definitions of "property" and "lot," [3] in Article 4 of the ordinance, it

it is different from the zoning across the street, the same arguments should prevail in favor of landowners immediately adjacent to the subject strip on the east and so on ad infinitum.
*Guentter*, 345 A.2d at 310 (quoting *DiSanto v. Zoning Board of Adjustment*, 410 Pa. 331, 335, 189 A.2d 135, 137 (1963)) (citation omitted).

3. "Property" is defined as "a tract of contiguous land surface, including the structures thereon, all sections of which are in the same

contends that the zoning ordinance does not require a single property split by a zoning line to be treated as though two separate zoning lots are created. It maintains, "[a]s the Zoning Ordinance makes no provision for the treatment of split-zoned lots, LHT can use either zoning district for its development and place the parking under the HC classification as permitted." (Brief of LHT, p. 18.) It cites no authority for this proposition and our research has disclosed none. In fact, in instances involving a split-zoned lot, the practice has been for the owner of the split-zoned property to seek a variance. *Zoning Board of Adjustment of Philadelphia v. Fun Bun, Inc.*, 5 Pa.Cmwlth. 439, 291 A.2d 344 (1972); *see also Esterhai v. Zoning Board of Adjustment of Philadelphia*, 1 Pa. Cmwlth. 361, 274 A.2d 556 (1971). Indeed, we have held that refusing to allow a landowner to use the residential portion of a parcel of land bisected by a zoning district boundary line as a parking lot, absent obtaining a variance, is permissible. *813 Associates v. Zoning Hearing Board of Springfield Township*, 84 Pa.Cmwlth. 420, 479 A.2d 677 (1984). In that case, the owner of a lot that had the same split zoning as the case *sub judice* sought to expand a parking area for a medical facility. The existing building was on the commercial tract, but the proposed parking area would have been on the area zoned residential. The variance was denied, an action affirmed on appeal. But, although the applicant did not meet his burden, there was no question that in seeking a variance he had used the proper procedural vehicle, unlike the appellant here.

Under LHT's theory, a large parcel of split-zoned land, in which the commercial area is *de minimis* and the residential

area substantial, could be forced to support a commercial use. Clearly, such a radical departure from municipal planning concerns and zoning requirements would require a variance or re-zoning, and must be presented in the appropriate forum with the appropriate procedure.

 In the alternative, LHT suggests that its parking lot should be regarded as an accessory use under the zoning provision that allows for an accessory use for "private garages and parking areas." We disagree for the same reason. An accessory use in a residential area must be accessory to the permitted principal use in the residential area. Therefore, a parking area for a retail outlet is not a permitted accessory use in a residential district. As we said in *Fun Bun*, 291 A.2d at 346, "[w]here two adjacent lots are split-zoned commercial and residential, and the owner proposes a single commercial use, *the appropriate procedure is to request a variance* to use the residential parcel for commercial purposes." (Emphasis added.) Additionally, in *Fun Bun* we quoted with approval from 3 A. Rathkopf, *The Law of Zoning and Planning* § 75–9 (1960) as follows:

> Where ... a variance to permit property in a residence district to be used for parking as an adjunct to business use in the adjacent business district [is at issue] ... [t]he extent of inconvenience or hardship enuring to the commercially zoned property through lack of a parking lot is irrelevant; the variance is improperly granted if the residentially zoned property can reasonably be used for the purposes to which the ordinance restricts it. . . .

ownership surrounded by a boundary that closes on itself."

"Lot" is defined as "a designated parcel or tract of land established by a plat or other-

wise permitted by law, and to be used, developed or built upon as a unit."

*Fun Bun,* 291 A.2d at 346 (omissions and textual alterations in original); *See also Township of Haverford v. Spica,* 16 Pa. Cmwlth. 326, 328 A.2d 878 (1974). The principle espoused in *Fun Bun* applies here as well.[4]

LHT also contends that the trial court erred when it decided that it did not need to reach the issues attendant to the appeal from the Board decision relating to (1) the requirement that LHT create a buffer zone between the two zoning districts on the property, (2) the view that it needed a variance for slope averaging and (3) the fact that it treated retaining walls as structures. However, we need not decide these issues since we agree with the trial court's conclusion that the plan was correctly denied based on the fact that the property was not zoned for the proposed use.

### ULTRA VIRES ACTIVITIES

■ LHT next asserts that Council acted *ultra vires* by denying the request to consolidate the property because the Pennsylvania Municipalities Planning Code[5] (MPC) does not allow the "regulation of consolidation as a subdivision." The gist of LHT's argument seems to be that its "subdivision" request was not in fact seeking a subdivision, but only consolidation and, therefore, denial of the subdivision plan was in error. We note first that LHT did label its plan as one for subdivision. Moreover, from the statements made in its application, and the maps submitted, it is

clear that LHT was, in fact, seeking *both* to consolidate all 9 lots into 1 lot, and then, immediately after, to subdivide a new Lot 1 from a new Lot 2. Additionally, LHT makes no argument that Council was without jurisdiction to act on a consolidation request. While, we agree that consolidation of the nine lots should probably have been permitted here, we conclude that any failure to do so was harmless error since merely consolidating the lots would not have resulted in LHT being able to build the Lowe's and attendant parking lot in the manner it proposed. Therefore, while we reject this argument, we direct that consolidation be granted upon LHT's submission of a proper request for consolidation.

### AUTHORITY OF COUNCIL TO DENY LAND DEVELOPMENT APPLICATION FOR NON–COMPLIANCE WITH ZONING REQUIREMENTS

■ LHT next asserts that Council wrongfully denied its subdivision plan because Council's basis for denying the plan was that it would violate provisions in the **zoning** ordinance.[6] It asserts that it is the Board, not Council, who must decide zoning issues. We have held that a governing body has a duty to consider zoning problems at the planning stage and that "[w]here significant use or zoning issues are apparent on the face of a site plan application, it does not offend policy to

---

4. While not specifically argued, LHT might have questioned whether the Zoning Officer's interpretation of the ordinance (that a parcel or tract of land must be used, developed or built upon as a unit which cannot occur if the lot sits in two different zoning districts), renders LHT's entire split-zoned lot unusable as long as it is split zoned. We do not address that issue since it was not raised, nor was the zoning ordinance provided to this Court on appeal. We note, however, that an interpretation of the Zoning Ordinance that would

prohibit the split-zoned parcel from being utilized at all because it sits in two different zoning districts would not be permitted.

5. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

6. Among the reasons listed for the denial were issues concerning the need for a retaining wall, a buffer zone, and the steepness of slopes.

 

deny approval of the plan and require the developer to resolve the use or zoning issue first...." *Bell Atlantic Mobile Systems, Inc. v. Zoning Hearing Board of the Township of O'Hara,* 676 A.2d 1255, 1263 (Pa.Cmwlth.1996), *affirmed sub nom., Crown Communications v. Zoning Hearing Board of the Borough of Glenfield,* 550 Pa. 266, 705 A.2d 427 (1997). Therefore, Council's action was in no way improper. It was LHT's decision to request subdivision approval without addressing the existing significant zoning issues first. Council does not have to ignore the fact that property is not zoned for the development proposed in evaluating a subdivision plan.[7]

### EQUAL PROTECTION

■ Finally, LHT maintains that it received disparate treatment from Council because Council approved a similar site plan filed by Home Depot. We disagree that, on the record, LHT received disparate treatment from Council. The undisputed evidence in the record is that Home Depot's site plan proposed a commercial development on property currently zoned commercial; it fit within the existing zoning classification. Conversely, LHT's plan was not in accordance with the existing zoning classification of the property, and was proposed for property zoned half commercial and half residential. The commercial development proposed may have been similar, but the site plans were quite different given the different zoning classifications of the property. As such, no additional trial court findings were needed. (Ex. B. to Response to Motion to Supplement Reproduced Record Regarding Shoppers Plaza). We, thus, hold that the

trial court committed no error of law in ruling as it did.

Based on the foregoing discussion, we affirm the order of the trial court.

### ORDER

**NOW,** October 31, 2002, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.

---

7. We also note that, contrary to LHT's legal posture that this case is not about rezoning, in its arguments, LHT refers to its "requested rezoning" (LHT brief at 15), and decries Council's "failure to rezone the RA parcel" (LHT brief at 16). Furthermore, the cases cited in LHT's brief also address the issue of rezoning.